UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 03-02-DCR |
| | ) | (Civil Action No. 6: 05-76-DCR) |
| V. | ) | |
| | ) | |
| GEORGE P. BAKER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Petitioner. | ) | |

*** *** *** ***

On February 15, 2005, Defendant/Petitioner George P. Baker filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 32] Pursuant to local practice, the motion was referred to United States Magistrate Judge J. B. Johnson, Jr., for a Report and Recommendation ("R&R"). The R&R filed August 19, 2005, concludes that the Petitioner's motion should be denied but that a certificate of appealability should be granted on the issues of the validity of the wavier provision contained in the parties' Plea Agreement and with respect to whether the Petitioner knowingly and voluntarily entered into the Plea Agreement. [Record No. 41] On August 30, 2005, the Petitioner filed objections to the R&R. [Record No. 42] The matter is currently pending for consideration of the Magistrate Judge's R&R and the Petitioner's objections.

Having conducted a *de novo* review of the issues raised by the Petitioner, the Court will deny the relief sought. Further, while the Court agrees with the Magistrate Judge's determination that a certificate of appealability should not issue regarding the claim of

ineffective assistance of counsel, the Court does not agree that a certificate should issue with respect to issues concerning the waiver provision contained in the parties' Plea Agreement or whether Baker knowingly and voluntarily entered the Plea Agreement.

## I.    RELEVANT FACTS

Baker was indicted by a federal grand jury on February 6, 2003.  The indictment contained eight counts charging Baker with knowingly and intentionally distributing a quantity of oxycontin pills on various dates in violation of 21 U.S.C. § 841(a)(1) (Counts 1, 2, 3, 4 and 5), as well as being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 6).  The remaining counts (Counts 7 and 8) sought forfeiture of firearms, ammunition and currency.  Baker was arraigned on July 23, 2003, and entered a plea of not guilty with respect to all charges.  Paul Croley was appointed to represent Baker pursuant to the terms of the Criminal Justice Act.

Prior to the scheduled pretrial conference, Baker sought to be rearraigned for the purpose of entering a guilty plea to one drug charge and to the charge of being a felon in possession of a firearm.  A hearing on this request was held on November 12, 2003.  Pursuant to the terms of a written Plea Agreement, Baker entered a guilty plea to Counts 5 and 6 of the indictment and to the two forfeiture counts (Counts 7 and 8).  [Record No. 24]  Paragraph 6 of the Plea Agreement outlined the parties' anticipated and recommended guideline calculations.  In paragraph 10, Baker waived the right to appeal and to attack collaterally his guilty plea, conviction and sentence.  During the plea colloquy, the Court questioned Baker to assure that

he fully understood the key provisions of the Plea Agreement, including the waiver provision contained in paragraph 10. [Record No. 39]

### A.    The Presentence Investigation Report

Following rearraignment, the United States Probation Office prepared a Presentence Investigation Report ("PIR") at the Court's direction. [Record No. 27] Baker's Offense Conduct is outlined in paragraphs 12 through 25 of the PIR.  In relevant part, these sections identify Baker's prior drug convictions which support his present conviction under 18 U.S.C. § 922(g)(1) (Count 6).  In paragraphs 13 through 17, the PIR details Baker's drug trafficking activities occurring at his residence during the period September 25, 2002, to November 19, 2002.

With respect to the transaction occurring November 19, 2002, the PIR indicates that "a confidential informant secured six Oxycontin 80 milligram tablets . . . from George Baker at Baker's dwelling for $600.00 in Kentucky State Police monies.  The confidential informant advised law enforcement that Mr. Baker was cleaning a firearm during the above exchange." [*See* Record No. 27, p. 7, ¶ 17.]  In addition, paragraph 18 of the PIR lists the various firearms and quantities of ammunition that were confiscated during a search of Baker's residence on November 20, 2002.  This paragraph also describes the location of the guns, ammunition and buy money used in at least one of the drug transactions.

The PIR indicates that Baker initially denied possession of the firearms and ammunition and claimed that they belonged to a live-in girlfriend, Rhonda Whitaker.  However, Whitaker was unable to produce documentation or other relevant information concerning her acquisition of the weapons.  Other information that she did provide indicated that Baker possessed the

-3-

firearms.  [*See* Record No. 27, p. 9, ¶¶ 20-21.]  Based on information gathered by the Probation
Officer concerning the Petitioner's possession of firearms during the drug transactions, Baker
was assessed a two level enhancement to the base offense level for the drug charge (Count 5) and
a four level enhancement to the base offense level for being a felon in possession of a firearm
(Count 6).  However, because the two counts were grouped pursuant to United States Sentencing
Guideline (U.S.S.G.) §3D1.2(c), the count with the higher offense level (Count 6) was applied
in determining the guideline range.  After applying a three level reduction for acceptance of
responsibility, Baker was assessed an Adjusted Offense Level of 21.  [Record No. 27, p. 11-12]
Based on a Criminal History Category II, Baker's guideline range for sentencing purposes was
41 to 51 months.  [Record No. 27, p. 22, ¶ 88]

> ### B.    The Plea Agreement

Prior to the November 12, 2003, hearing, the parties signed a non-binding Plea
Agreement.  Several provisions of the Plea Agreement are relevant to Baker's §2255 motion.
For example, in paragraph 3, Baker admitted that the following facts were accurate and could
be proven if the matter proceeded to trial:

> (a) That on or about November 19, 2002, in Perry County, Kentucky in the
> Eastern District of Kentucky, a Kentucky State Police confidential informant (CI)
> went to the defendant's residence and made a controlled purchase from the
> defendant of (6) Oxycontin 80 mg pills containing oxycodone for the purchase
> price of $600.00 in currency.  The transaction was electronically monitored and
> surveilled by officers.  During the transaction the defendant was cleaning a
> firearm.  The substance tested positive for oxycodone.

[Record No. 24, p. 2]

In paragraph 6, the parties recommended certain guideline calculations, while recognizing that these recommendations were not binding on the Court.

> 6.  The United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to other calculations.   This recommendation does not bind the Court.
>
> > (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2002 manual, will determine the Defendant's guideline range.
> >
> > (b) Pursuant to U.S.S.G. § 2D1.1, the base offense level for Count 5 is 12.
> >
> > (c) Pursuant to U.S.S.G. § 2K1.1, the base offense level for Count 6 is 20 and will group pursuant to U.S.S.G. § 3D1.1 et seq. with Count 5 for a total offense level of 21.
> >
> > (d) Pursuant to U.S.S.G. § 3E1.1, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility.   If the offense level determined prior to this 2-level decrease is 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

[Record No. 24]

Finally, in paragraph 10 of the Plea Agreement, Baker agreed to waive "the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution." [*See* Record No. 24, p. 4]  Although it was reviewed and discussed during the rearraignment held November 12, 2003, the Plea Agreement was not approved or entered by the Court until after the sentencing hearing held March 12, 2004. [*See* Record No. 23.]

### C.    The Rearraignment Hearing

Baker appeared for purposes of rearraignment to Counts 5 and 6 of the indictment on November 12, 2003.  After questioning Baker to determine that he was competent to enter a

guilty plea [Record No. 39, pp. 4-8], the Petitioner was asked about his relationship with his attorney.

> Q.  And are you satisfied with the advise (sic), representation, and counsel that he's given you in this case?
>
> A.  So far, sir.
>
> Q.  All right.  And you'll tell me if you're dissatisfied?
>
> A.  Yeah.  I'd let you know.

[Record No. 39, p. 9] In fact, Baker did not indicate any dissatisfaction with his attorney at any time during the criminal proceeding.

After the assistant United States Attorney reviewed the essential terms of the Plea Agreement with the Court and the Defendant[1], the Court questioned Baker regarding his understanding of and agreement with the various provisions.

> Q.  Other than what's contained in the plea agreement, has anyone made any promises to you in order to convince you to enter into the plea agreement?
>
> A.  No promise.

                              *   *   *

> Q.  And I believe you said this is the full and complete agreement that you have with the United States; is that correct?
>
> A.  That's correct.

---

[1]     The AUSA confirmed that the recommended sentencing guidelines were not binding on the Court during this review.  *See* Record No. 39, p. 10.

[Record No. 39, p. 12]   With respect to application of the sentencing guidelines, Baker confirmed that, as of the date of the rearraignment, neither the Court nor the Petitioner's counsel could determine his actual sentencing guideline range.

> Q.  Now, do you understand that although . . . the statute sets forth a maximum period of punishment – maximum period of incarceration, the Sentencing Guidelines are used to determine the actual sentence in the case?  Do you understand that?
>
> A.  Yes, sir.
>
> Q.  Let me just briefly review with you the guidelines and how they operate, Mr. Baker. I'm sure Mr. Croley has gone over this with you, but I want to go over it with you as well.  The guidelines are based upon two factors; first, is the offense level for the crime for which you've been charged and second is [your] criminal history.  Those two factors together determine the guideline range.
>
> Now, I find out about those factors and about the guideline range from the presentence report that will be prepared by the probation office.  After that report has been prepared, it will be shown to you and it will be shown to your attorney and it will be shown to the attorney for the United States.  You'll all have a chance to review it.  You'll have a chance to file any objections to anything that you disagree with and, of course, I would have to rule on those objections before you could be sentenced.
>
> A.  Okay.
>
> Q.  Now, do you understand that [until] that process takes place and all those steps have been followed that it would be impossible for the Court to know exactly what the guideline range would be for your case?
>
> A.  Yes, sir.
>
> Q.  In other words, you may have a general idea right now, but you won't have an exact idea as to what the guideline range would be.
>
> A.  Exactly.

[Record No. 39, pp. 15-16.]

In addition to the foregoing discussion, the Court explained and confirmed that Baker understood that he waived the right to appeal his sentence and waived the right to file a separate lawsuit challenging his sentence.  The Court also explained that if his sentence exceeded his expectation, he would still be bound by the terms of the Plea Agreement.

> Q.  . . . Now, your plea agreement has what's called waiver language contained in it, and you're aware of that?
>
> A.  Yes, sir.
>
> Q.  Now, I want to go over that with you as well, Mr. Baker.  In paragraph 10 it provides that you waive the right to appeal and the right to collaterally attack the guilty plea, conviction, and sentence, including any order of restitution.  Do you understand that you waive those rights?
>
> A.  Yes, sir.
>
> Q.  Now, when it says that you waive the right to collaterally attack something, [do] you understand that means to file a separate lawsuit to challenge it?
>
> A.  Yes, sir.
>
> *   *   *
>
> Q.  And, as I mentioned previously, if the sentence that would be imposed in your case would be more severe than you would expect, you would still be bound by the plea agreement, and you wouldn't have an opportunity to withdraw it at [that] time.  Do you understand that?
>
> A.  Yes, sir.

[Record No. 39, pp. 17-18]

The transcript of the November 12th hearing also contains an extensive discussion concerning Baker's admitted possession of firearms during the relevant period.  And while he was initially hesitant to admit ownership of the firearms, he was given ample opportunity to

consult with his attorney before the Court accepted his guilty plea. Following the Court's review of Counts 5-8 of the indictment, the following discussion occurred concerning the issue of firearms possession:

> Q. . . . With respect to the firearms that I [have] just gone over with you and that are listed in the plea agreement and in the indictment, you told me that you used – the residence that you were using that residence where those firearms were located. Did you have possession of those firearms, either joint possession or sole possession?

> A. I was not in sole possession. It belonged to someone else that lived at the residence. They did not belong to me. That was under secure conditions. The guns was there, yes, sir. I don't handle guns. I don't like guns so I'll plead guilty.

> THE COURT: Well, let me ask the United States what its proof would be if the matter were to proceed to trial with respect to the issue of the firearm possession.

> MR. SMITH: Your Honor, the United States submits to the Court that we have other proof other than what's been admitted to here by the defendant, including, but not limited to, the fact that on the transaction on the 19th. The witness that did go into the residence and make the purchase identified that he was cleaning a firearm. There's discussion on the tape with him talking about certain firearms, models, mechanical bars.

> In addition, at the time of the search some of the weapons were secured. Several of them were in a safe box which only he could give the combination to or the key to get into it. And he did, in fact, do that for the officers. And, further, one of those firearms had a lock on the trigger and he produced a key for it as well to unlock the key or to unlock the weapon which was, I believe, a trigger lock.

> In addition, essential evidence in that residence and including the fact that much of his clothing, much of his current medication was found in amongst the ammunition in areas which were in close proximity to the firearms. Some were in the bedroom. Medications were on the night stand and dresser near the bed which, again, we're are – again, were all circumstances which we believe that sufficiently establish that he was – if not the sole possessor, he was definitely in constructive possession and in joint possession of all the firearms and the ammunition that is listed.

*   *   *

BY THE COURT:

Q.  Mr. Baker, if this matter proceeded to trial, would you agree that the United States could prove what Mr. Smith has just represented to the Court?

A.  I long – I plead – I plead guilty.

Q.  Well, Mr. Baker, I want to make sure that you understand that not only do I not want you to plead guilty to something you don't think you did, but I really cannot and will not accept a plea unless there's really a factual basis for it.

Now, I believe the United States has stated a sufficient factual basis, but I want to make sure that you – if you know that you did this, and if you did, in fact, do it and you acknowledge it, then you may be entitled to acceptance of responsibility.  If you enter a plea and there's some hesitation on your part, if could affect that[.] and you may – and, counsel, I'm not trying to suggest whether you should or should not enter a plea, but I want to make sure that you have had a chance to speak with Mr. Croley about that and how that affects your case before we proceed earlier (sic) [further][2] on this gun issue.

MR. CROLEY: May I take just a minute or so, your Honor?

THE COURT: Yes, sir, you certainly may.  And counsel, I appreciate your indulgence on this.

[Record No. 39, pp. 22-25]  Following a brief recess during which Baker consulted with his attorney, the Petitioner acknowledged the truthfulness of the facts outlined by the assistant United States Attorney.

MR. CROLEY: Your Honor, I've met with Mr. Baker and I believe he understands the importance of establishing a factual basis as to the gun charges.  I believe he would agree that everything Mr. Smith said that he could prove.

THE DEFENDANT: I agree with that.

THE COURT: You agree with that.   All right.

[Record No. 39, p. 25]

---

[2]     Throughout this Memorandum Opinion and Order, the Court has attempted to correct obvious errors in the transcript made by the official court reporter.

**D.     The Sentencing Hearing**

Pursuant to the Court's sentencing Order dated November 12, 2003, a sentencing hearing was scheduled initially for March 5, 2004 [Record No. 19], but was later continued for one week at the request of Baker's attorney.  [*See* Record Nos. 20 and 22]  Pursuant to the sentencing Order, the parties were directed to file any objections to the PIR within fourteen days of their receipt of that document.  The PIR was disclosed on January 30, 2004.  However, neither party objected to the factual statements contained in the PIR or its guideline calculations within the time provided by the Court.  Likewise, neither party objected to the PIR at the time of the sentencing hearing.

At the outset of the sentencing hearing, Baker confirmed that he had received and reviewed the report and that he had discussed it with his attorney.  [Record No. 36, p. 3]  After again confirming that Baker did not object to the provisions of the report, the Court began to review the guideline calculations contained within the report, but was interrupted by Baker's counsel.

THE COURT: . . . As I understand, there are no objections to the presentence report, is that correct?

MR. CROLEY: That's correct, Your Honor.

THE COURT: All right.  Very well.  Let me review the presentence report then briefly with the parties.  I will adopt the findings that are set forth in the presentence report as well as the guideline calculations that I'll review at this time.

MR. CROLEY: Your Honor, I'm sorry I didn't mean to interrupt you.  There are no objections to the calculations as prescribed in the presentence report.  However, I would point out that we also have some guideline calculations in the plea agreement which are different from those in the presentence report, and I am simply going to ask the Court to sentence Mr. Baker pursuant to the plea agreement.

-11-

THE COURT: All right.  Now, before I look at that, as I understand, this was not a plea that was entered into pursuant to 11(e) (sic) [(c)] (1)(C) of the criminal rules; is that correct?  In other words, it's not a binding plea agreement?

MR. CROLEY: Correct.

THE COURT: All right.  Do you wish to be heard on that before I do proceed?

MR. CROLEY: No, Your Honor.

[Record No. 36, pp. 3-4]  Following this exchange, the Court proceeded to review the guideline calculations and gave the parties another opportunity to object to the calculations.  Again, however, neither attorney raised any objection to the factual statements contained in the PIR or its guideline calculations.  [Record No. 36, pp. 4-5]  While the Petitioner's attorney did not object to the guideline calculations which placed Baker's sentencing range between 41 and 51 months' incarceration, his attorney again asked during allocution that the Petitioner be sentenced within the range recommended in the Plea Agreement.[3]  [Record No. 36, p. 7]  Further, Baker's counsel asserted that,

> As far as the sentencing options, he signed a plea agreement.  The guideline range of imprisonment listed in the plea agreement would have been – the offense level was based on Level 18, Criminal History of II, running from 30 to 37 months. It's stated in the plea agreement that it's recommended that no other enhancements be assessed to either count and the counts of conviction not group under 3D1.2 and a combined offense level as to 3D1.4 should apply.  We are requesting the Court follow those recommendations pursuant to the plea agreement.

---

[3]     Contrary to counsel's representations, a specific sentencing range was not recommended in the Plea Agreement.  Instead, the parties assumed that his adjusted base offense level would be 18.  No recommendation was made regarding Baker's criminal history category.  Instead, the Plea Agreement provided that "[n]o agreement exists about the Petitioner's criminal history category pursuant to U.S.S.G. Chapter 4." [*See* Record No. 24, p. 3, ¶ 7.] Therefore, in addition to agreeing that the guideline calculations were merely recommendations and were not binding, the parties acknowledged that there was no agreement regarding one important sentencing factor: the Petitioner's criminal history.

-12-

[Record No. 36, p. 7]

As shown by the portion of the Plea Agreement outlined *infra* at page 5, part of counsel's representation was incorrect. The Plea Agreement did not (and indeed could not) contain any recommended range of imprisonment because the Petitioner's criminal history was not known at the time. Likewise, the Plea Agreement did not contain a recommendation or agreement of the parties that no other enhancements should be assessed. Instead, the Plea Agreement is silent with respect to other enhancements. Clearly, silence cannot be equated with a recommendation that no other enhancements should be applied. Therefore, while the parties may have speculated in November 2002, about Baker's Criminal History Category, that category was not referenced in the Plea Agreement. Finally, the Plea Agreement did not mention a range of 30 to 37 months imprisonment as Baker's counsel represented.

Based on the information submitted by the parties and contained in the PIR, Baker was sentenced to a term of imprisonment of 45 months, to be followed by a term of supervised release of six years. In reaching this determination, the Court rejected the Petitioner's request that he be sentenced according to the estimated adjusted base offense level of the Plea Agreement, as interpreted by his counsel.

### E.    Baker's Motion to Vacate, Set Aside, or Correct His Sentence

Baker's motion alleges ineffective assistance of counsel as grounds for the relief he seeks. The memorandum attached to his motion contends that his attorney violated the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), by failing to object to the PIR. Further, he asserts that his guilty plea was not made knowingly and voluntarily because he claims to have

-13-

understood that he would be sentenced to a term of imprisonment of 30 to 37 months. In support, he attached correspondence from his attorney and the assistant United States Attorney which indicates that, on November 12, 2003, he was given a deadline of noon on November 10, 2003 to accept the plea deal offered by the United States. The letter from the United States (which was apparently forwarded to Baker on November 6, 2003) indicates as follows:

> Pursuant to our conversation yesterday, I have reviewed the file and can offer your client the following on a plea of guilty to at least one drug count and the felon in possession count: Offense level of 21 with 3 off for acceptance for a total of 18. I am not sure the criminal category, but a level II is 30-37 months. Due to the pretrial and trial dates pending, I must have an acceptance of this offer no later than Monday, November 10, 2003 at noon.

[Record No. 32; attachment] The parties did not reference this letter prior to the filing of Baker's habeas motion.

Baker claims that the offer outlined in the United States' November 6, 2003, letter was accepted and communicated to the assistant United States Attorney before the noon deadline on November 10, 2003, and that the Plea Agreement signed two days later contained the terms outlined in the November 6, 2003, letter. He further asserts that, upon review of the PIR, he asked his attorney to "send a letter to the probation officer to object to the base offense level because that was not part of the plea agreement. And similar to the argument made by his counsel during the sentencing hearing, Baker claims that the Plea Agreement "recommends that no enhancement should be assessed to either count [of conviction]."

Baker also contends that his plea was not knowing and voluntary because his attorney failed to explain the ramifications of accepting and agreeing to the enhancement under U.S.S.G. § 2D1.1(b)(1) that was not outlined in the Plea Agreement. According to Baker, this failure

-14-

constitutes ineffectiveness under *United States v. Booker*, 125 S. Ct. 738 (2005).  He asserts that

his attorney should have advised him to appeal his sentence, anticipating the outcome in *Booker*.

Finally, by virtue of the enhancement to his offense level for firearms possession, the  Petitioner

asserts that he is ineligible to participate in the Bureau of Prison's drug treatment program and

become eligible for certain furloughs prior to his release date.  He requests an evidentiary

hearing with respect to these issues.

In response to Baker's motion, the United States argues that the Petitioner has failed to

show that his sentence resulted from error of "constitutional magnitude which had a substantial

and injurious effect or influence on the proceedings"; that he has failed to establish a

"fundamental defect which inherently resulted in a complete miscarriage of justice or an error

so egregious that it amounts to a violation of due process"; and that there is no showing that he

was provided with ineffective assistance of counsel.  [Record No. 37]  With respect to Baker's

factual representations, the United States submitted an affidavit of Baker's counsel which

provides, in part, that his attorney advised him of the following salient points:

- counsel read the entire Plea Agreement to Baker and explained each section and paragraph to him;

- counsel advised Baker that the Plea Agreement was not binding on the Court;

- counsel discussed with Baker the fact that while guideline calculations were included in the Plea Agreement, the Court would make the final decision regarding whether certain enhancements would be applied to the offense level;

- Baker represented to counsel that he understood these facts and was comfortable signing the Plea Agreement;

- Baker was advised that if he signed the Plea Agreement he would waive the right to appeal his conviction.

These statements are consistent with the statements and representations of Baker made during the various hearing in the criminal proceeding.

In addition to the foregoing matters, Croley's affidavit contradicts Baker's assertions regarding the enhancement for firearms possession contained in the PIR.  More specifically, in paragraphs 9 and 10, Croley's affidavit provides, in part, that:

> 9.  Subsequent to the plea, the Defendant met with U.S. Probation and Parole to provide information for the pre-sentence report.  The Defendant was candid with the Officer and gave information about his conduct related to the specific offense.  Specifically, he told the Officer that he possessed a firearm at the time the offense was committed.  That information was also contained in the factual statement of the plea agreement.

> 10.  In the pre-sentence report, a 4-level enhancement was calculated given that the Defendant possessed a firearm in connection with the felony offense.  The undersigned met with the Defendant and discussed the situation.  The undersigned advised the Defendant that there was a legal basis for the enhancement. . . .

In his reply to the United States' brief, Baker repeats some of his initial arguments.  In addition, he claims that the waiver contained in his Plea Agreement does not waive his right to assert claims of ineffective assistance of counsel.  Further, he argues for the first time that, under the circumstances presented, the United States breached the Plea Agreement by failing to request that he be sentenced at the low end of his guideline range.  Although there is no factual support for this new assertion, he contends that the United States agreed to such in the Plea Agreement.  And with respect to his claim of ineffective assistance of counsel, Baker falsely represents that the Plea Agreement specifically recommends that "**no** enhancement should be assessed to either count."  [*See* Record No. 40, p. 4.]

-16-

## II.     ANALYSIS

### A.     The Magistrate Judge's Report and Recommendation

After outlining the factual history concerning Baker's arrest and conviction and the procedural history of the case, the Magistrate Judge addressed the questions of whether Baker validly waived the right to appeal and to collaterally challenge his sentence and whether Baker procedurally defaulted by not appealing the validity of the waiver of his sentence.  With respect to the first issue, the Magistrate Judge concluded that Baker's waiver was made with the knowledge that the recommendations contained in the Plea Agreement were not binding on the Court.  Further, although he might have hoped to receive a lesser sentence, he was not mis-advised with respect to his plea or the waiver provision contained in the Plea Agreement.  This conclusion is supported by the Defendant's own statements, testimony, and representations made during the various hearings which are outlined above.  As noted by Magistrate Judge Johnson, "the fact that a defendant, at the time he enters his guilty plea, does not know the precise sentence he will receive does not mean that the plea was 'unknowing'.  *United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990); *United States v. Crusco*, 536 F.2d 21, 24 (3d Cir. 1976)."  [Record No. 41, p. 9]

This Court also agrees with the Magistrate Judge that Baker has not shown that his counsel was ineffective under the applicable standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  In addition to counsel's representations, the Court specifically and clearly advised Baker of the effect of the waiver provision contained in paragraph 10 of his Plea Agreement.  His claims to the contrary are simply misplaced.

-17-

With respect to Baker's claim that his counsel was ineffective for not objecting to the four level enhancement for possession of a firearm, the record demonstrates that he made the functional equivalent of an objection by asking the Court to sentence him pursuant to the parties' expected guideline range. The undersigned considered this request, but specifically rejected it based on the Court's finding that the facts presented and agreed to by the parties supported the enhancement.

Concerning the issue of procedural default, the Magistrate Judge correctly concludes that Baker has failed to show either cause and actual prejudice or actual innocence. As Magistrate Johnson correctly points out, nothing in the record suggests that Baker ever informed his attorney that he wanted to appeal his sentence. Further, in light of the express waiver provision contained in the Plea Agreement, Baker could not have challenged his sentence on direct appeal. Likewise, Baker may not use § 2255 as a means to circumvent a direct appeal. [Record No. 41, pp10-12][4]

Finally, the Magistrate Judge recommends that the Court issue a certificate of appealability with respect to two issues: (1) the validity of the waiver contained in the Plea Agreement; and (2) whether Baker "knowingly" entered the Plea Agreement. The Magistrate Judge correctly notes that a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right" and shall indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(2); *Murphy*

---

[4]     The Magistrate Judge has also recommended that Baker's request for an evidentiary hearing be denied. The Court agrees with this assessment. Here, the record is more than adequate to conclusively resolve all issues raised by the Petitioner.

-18-

*v. Ohio*, 263 F.3d 466 (6th Cir. 2002). However, when a habeas petition is denied on procedural grounds without reaching the constitutional claim, a certificate should issue if the petitioner is able to demonstrate that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473 (2000). In the opinion of the Magistrate Judge, the decision to enforce the waiver contained in Baker's Plea Agreement is a procedural ruling. He recommends issuance of a certificate of appealability with respect to this issue based on the fact that the waiver does not contain language which expressly preserves the right "to challenge an illegal sentence and lacked the limiting language often found in such waivers." The undersigned respectfully disagrees with this recommendation. Under the facts presented, it is clear that Baker understood that he was waiving the right to appeal his sentence. Such clear and unambiguous waiver provisions are often included in plea agreements and upheld by the Sixth Circuit.

In addition, the Court does not believe that the question concerning whether Baker's waiver was made knowingly presents an issue which can be reasonably debated. Factually, it is clear that Baker signed a non-binding Plea Agreement which did not contain a recommended sentencing range. Further, he was advised at all relevant times that the actual range could not be predicted until the time of sentencing when all factual issues affecting that range had been resolved. If a certificate of appealability is appropriate with respect to this issue, then a similar certificate should be issued in each and every criminal case in which the defendant is willing to

-19-

make assertions that are contrary to clear and unambiguous statements and admissions made during Rule 11 proceedings.

**B.      Baker's Objections to the R&R**

The Court has also reviewed and considered the objections filed by the Petitioner. [Record No. 42] However, they do not alter any conclusion reached in this Memorandum Opinion and Order.  Further, Baker's claim that he did not realize that he waived his right to file a habeas proceeding is not supported by the record.   As the Court explained during the Petitioner's rearraignment, by waiving the right to attack collaterally his guilty plea, conviction and sentence, he was waiving the right to file a separate action.  He acknowledged he understood the full import of this waiver.  Baker's assertions to the contrary merely enforce the conclusion that he is being less than honest in an attempt to reduce a validly-imposed and factually-supported sentence of 45 months.[5]

**III.    CONCLUSION**

Based on the foregoing discussion, it is hereby **ORDERED** as follows:

1.      Defendant/Petitioner George P. Baker's motion to vacate, set aside or correct his sentence in London Criminal No. 03-02 is **DENIED**.  Further, Civil Acton No. 6: 05-76-DCR is **DISMISSED** and **STRICKEN** from the Court's docket.

2.      The Court shall not issue a certificate of appealability with respect to any issues raised herein by the Defendant/Petitioner.

---

[5]      Baker repeats in his objections to the Magistrate Judge's R&R his earlier assertion that the United States breached the Plea Agreement by failing to recommend a sentence at the low end of his guideline range. The Court simply notes that repeating a specious argument, does not give it any more weight than it had originally.

-20-

3.      The Court adopts and incorporates the Magistrate Judge's conclusion and recommendation that no hearing is required and that a certificate of appealability should not be issued with respect to the Defendant/Petitioner's claim of ineffective assistance of counsel. However, the Court specifically rejects the recommendation that a certificate of appealability should be issued with respect to: (i) the validity of the waiver provision contained in the Plea Agreement or (ii) the issue of whether the Defendant/Petitioner knowingly entered the Plea Agreement.  Otherwise, to the extent the Report and Recommendation is not inconsistent with this Memorandum Opinion and Order, it shall be adopted and incorporated by reference.

4.      A separate Judgment shall issued this date.

This 15th day of September, 2005.



**Signed By:**

**_Danny C. Reeves_**  DCR

**United States District Judge**